IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TODD FRANKFORT, CURTIS GOODBAN, AND SARINA GUTIERREZ**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>vs.<br><br>**METROPOLIS TECHNOLOGIES, INC.**<br><br>*Defendant.* | § § § § § § § § § § § § § | <br><br><br><br><br>Civil Action No. _____<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' CLASS ACTION COMPLAINT**

**I. SUMMARY OF ACTION**

1. Todd Frankfort, Curtis Goodban, and Sarina Gutierrez, individually and on behalf of the Class of all other persons similarly situated, file this Class Action Complaint against Metropolis Technologies, Inc. ("Metropolis"), and allege as follows:

**II. INTRODUCTION**

2. Metropolis is a new player in the parking industry. Its public filings and press releases speak to a technology-driven approach that incorporates AI and machine learning to provide seamless parking solutions and maximize revenue for facility owners. In actuality, Metropolis created systems that are designed to intentionally confuse, deceive, and charge unauthorized fines and fees to extract more revenue from consumers.

3. Metropolis's multi-billion-dollar business model entails duping consumers into wrongfully paying illegal "parking violation fines" allegedly incurred while parking at private properties owned or managed by Metropolis.

4. Metropolis touts that its "leading-edge computer vision technology" captures revenue and reduces costs for these private parking lots.[1] Metropolis operates in over 40 U.S. metropolitan centers enabling it to "capture revenue from more than five million consumers who do not have to stop and pay."[2]

5. On information and belief, Metropolis owns or partners with entities and persons that own, manage, or otherwise control parking facilities throughout the United States. Metropolis installs monitoring technology that identifies and tracks vehicles entering and leaving a parking facility—while eliminating entry and exit gates where consumers would typically have to stop and pay. Instead, Metropolis replaces entry and exit gates with small signs containing a QR code where consumers are expected to (1) notice the sign, (2) have the knowledge and capability through a smart device to scan the QR code, and (3) pay the requisite parking fee.[3]

6. Predictably, this "drive in and drive out" payment experience causes consumers, like Plaintiffs, to fail to pay the required parking charge.[4] Afterward, Metropolis mails a form "Notice of Parking Violation" ("Notice") to the vehicle owner, demanding payment of the unpaid parking charge and a "Violation Fine" (referred to as the "Violation Fine" and "Violation Fine Scheme"). The "Violation Fine" is multiple times the parking charge, is undisclosed prior to being levied, is arbitrary and outrageous in amount, and is illegal. In Plaintiff Goodban's case, the parking fare is stated to be $5, and the violation fine is $70.25.[5] Metropolis's Violation Fine is **1,405% of the alleged parking fee**.

---

[1] Ex. A, Press Release
[2] *Id.*
[3] A QR code (Quick Response) is a type of bar code consisting of black squares arranged on a background in a square grid, which can be scanned by a smartphone to access a specific webpage or digital payment application.
[4] *Id.*
[5] Ex. B, Notice of Parking Violation.

7. Contained in various form Notices are threats Metropolis may tow and/or boot a consumer's vehicle or subject the consumer to further ticketing or potential legal actions if the Violation Fine is not paid, "at the sole discretion of Metropolis." By the time consumers receive a Notice, their vehicle has already left the Metropolis facility; and Metropolis's threats of "booting and/or towing" are plainly illegal.

8. No authority permits Metropolis to tow and/or boot a consumer's vehicle outside of its facilities, nor levy and collect exorbitant Violation Fines on behalf of a private party, making Metropolis's Violation Fine Scheme unlawful. Metropolis's actions violate the Federal Fair Debt Collection Practices Act ("FDCPA"); the Texas Fair Debt Collection Practices Act ("TFDCPA"), Texas Finance Code § 392; and the Texas Deceptive Trade Practices Act ("DTPA"), Texas Business and Commerce Code §§ 17.41–17.63.

9. As a result of the Violation Fine Scheme, a significant number of Metropolis's customers who have parked at a Metropolis managed garage have received Notices allegedly imposing Violation Fines and falsely threatening other actions that cannot be lawfully performed. Metropolis's intentional scheme has resulted in customers being coerced into paying these illegal Violation Fines.

### III. PARTIES

10. Plaintiff Todd Frankfort is, and at all relevant times has been, a resident and citizen of Houston, Texas. Plaintiff received a Notice from Metropolis seeking a Violation Fine and paid the Violation Fine.

11. Plaintiff Curtis Goodban is, and at all relevant times has been, a resident and citizen of Royse City, Texas. Plaintiff received a Notice from Metropolis seeking a Violation Fine and paid the Violation Fine.

12. Plaintiff Sarina Gutierrez is, and at all relevant times has been, a resident and citizen of Houston, Texas. Plaintiff received a Notice from Metropolis seeking a Violation Fine and paid the Violation Fine.

13. Metropolis Technologies, Inc. is a Delaware corporation. Its principal place of business is 1314 7th Street, 5th Floor, Santa Monica, CA 90401. Metropolis may be served with process in Texas through its registered agent, Incorporating Services, Ltd., 3610-2 North Josey, Suite 223, Carrollton, Texas 75007-1603. Metropolis includes any presently unknown predecessors, successors, subsidiaries, affiliates, and all those benefiting from the Violation Fine Scheme, which may be legally liable whether by merger, assignment, or otherwise.

## IV. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class of plaintiffs and one defendant are citizens of different States. This Court has subject matter jurisdiction over Plaintiffs' FDCPA claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court may exercise supplemental jurisdiction over Plaintiffs' state-law claims under the TFDCPA and DTPA pursuant to 28 U.S.C. § 1367(a).

15. This Court has specific personal jurisdiction over Metropolis because it conducts business in Texas, has purposefully availed itself of the benefits and protections of Texas by continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within Texas, and intentionally and purposefully seeking to collect Violation Fines within the districts of Texas and throughout the United States

with the expectation and intent that consumers would pay them, and it has illegally collected and profited from these Violation Fines.

16. Venue is proper in this Court, as it is the district where a substantial part of the events giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). Plaintiff Goodban parked in a Metropolis facility in the Northern District of Texas, and Metropolis mailed its violation Notice (with the intent to collect the Violation Fine) to Plaintiff Goodban, who lives in the Northern District of Texas.

## V. CLASS ACTION ALLEGATIONS

17. Plaintiffs bring this action as a class action and as the representatives of the Class and Subclasses defined below. This action is brought and may be maintained under Federal Rule of Civil Procedure 23.

18. Plaintiffs bring this action on behalf of themselves and all other individuals who meet the following Class and Subclass definitions:

  a. **Federal Claims Class ("Federal Class")**:

   i. All non-excluded persons or entities, being citizens of the United States who have received a Notice from Metropolis and paid any Violation Fine to Metropolis.

   ii. Excluded from the Federal Class are: (1) agencies, departments, or instrumentalities of the United States of America, (2) the State of Texas, (3) Metropolis, its affiliates, predecessors, and employees, officers, and directors, and (4) all persons who properly execute and file a timely request for exclusion from the Federal Class.

  b. **Texas Claims Subclass ("Texas Subclass"):**

   i. All non-excluded persons or entities, being citizens of Texas who have received a Notice from Metropolis and paid any Violation Fine to Metropolis.

   ii. Excluded from the Texas Subclass are: (1) persons who are not citizens of Texas, (2) agencies, departments, or instrumentalities of the United States of America, (3) the State of Texas, (4) Metropolis, its affiliates,

   predecessors, and employees, officers, and directors, and (5) all persons who properly execute and file a timely request for exclusion from the Texas Subclass.

19. Plaintiffs and putative class members may fall into either the Federal Class or Texas Subclass, or both.

20. The number of members in each class for whose benefit this action is brought is so numerous that joinder of all class members is impracticable.

21. Members of the Federal Class and Texas Subclass are so numerous and spread out across the United States and Texas that joinder of all is impractical.

22. Metropolis operates hundreds of parking facilities across the United States, where it operates its drive-in, drive-out system and seeks Violation Fines from patrons of these facilities.

23. Millions of consumers use these facilities, and it is reasonable to assume that a significant number of Metropolis's customers have been sent Notices, issued Violation Fines, and paid Violation Fines.

24. Metropolis has within its possession or control records that identify all persons to whom it sent Notices and collected Violation Fines. The actual number in each class can be established through discovery of Metropolis's books and records.

25. Among the questions of law and fact that are common to the Federal Class members are:

  a. whether Metropolis is a "debt collector" under the FDCPA;

  b. whether Metropolis may lawfully assess and collect or attempt to collect the Violation Fine; and

  c. whether the Violation Fine Scheme violates the FDCPA;

26. The questions of law and fact that are common to the Texas Subclass are:

  a. whether Metropolis may lawfully assess and collect or attempt to collect the Violation Fine;

    b. whether Metropolis's Violation Fine Scheme is a "debt collection" and Metropolis is a "debt collector" under the TFDCPA;

    c. whether the Violation Fine Scheme violates the TFDCPA;

    d. whether Metropolis's claim to, and collection of, a Violation Fine, including the statements in its form Notice, constitutes an impermissible threat or coercion under the TFDCPA;

    e. whether Metropolis's claim to, and collection of, a Violation Fine is an "unconscionable action" under the TFDCPA;

    f. whether Metropolis's claim to, and collection of, a Violation Fine, including the statements in its form Notice, is a false, misleading, or a deceptive act or practice under the TFDCPA; and

    g. whether the collection, and attempted collection, of the Violation Fine by Metropolis was committed intentionally.

27. Plaintiffs' claims are typical of the members of the Federal Class and Texas Subclass because they have received Notice from Metropolis attempting to collect the Violation Fine, and they have paid the Violation Fine. Plaintiffs seek no relief that is antagonistic or adverse to other members of the two classes.

28. Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel who are competent in the prosecutions of class actions, FDCPA claims and complex litigation. Accordingly, Plaintiffs will fairly and adequately protect and represent the interests of each class member.

29. Questions of law or fact that are common to the members of the classes are substantially similar and predominate over any questions affecting only individual class members, and a class action is the only appropriate method for the fair and efficient adjudication of this controversy for these reasons:

    a. The individual Violation Fines and any ancillary amounts of damages involved are too small to justify individual actions,

    b. The costs of individual actions would unreasonably consume the amounts that would be recovered,

    c. Individual actions would unduly burden the judicial system, and

    d. Individual actions brought by class members would create a risk of inconsistent results and unnecessarily duplicate this litigation.

30. This district represents the most desirable forum for the litigation of the claims of the class as a substantial portion of the acts giving rise to the claims of the classes occurred in this district.

31. Plaintiffs do not anticipate any difficulty in managing this action because the evidence proving Metropolis's scheme is easily ascertainable through discovery. The identities of the class members are known by Metropolis, damages can easily be calculated from Metropolis's records, and any statutory or punitive damages will be decided by this Court and a jury.

## VI. STATEMENT OF FACTS

**A.   Metropolis's System is designed to generate Violation Fines.**

32. At parking lots owned or operated by Metropolis, individuals may park their cars in a particular spot, for a particular amount of time, in exchange for a pre-set fee. In Plaintiff Goodban's case, the parking rate at the Metropolis garage located at 500 N. Ackard Street, Dallas, Texas (the "N. Ackard Garage"), was $5 for his stay lasting only 16 minutes on June 11, 2024. Plaintiffs Frankfort and Gutierrez each parked at the Metropolis-operated Texas Women's Hospital-Fannin Street garage located at 7600 Fannin Street, Houston, Texas (the "Fannin Garage"), where the rates for their respective stays were $9 and $12.

33. On information and belief, most Metropolis parking facilities, like the N. Ackard and Fannin Garages, are unattended for long periods of time. There are no entry or exit gates at either garage, and any individuals wanting to park at the N. Ackard or Fannin Garage can only pay

for parking by scanning a QR code that is placed on inconspicuous signs sparingly posted within the garage.

34. There are either no rates posted at the Metropolis-operated garages (only a QR code) or there are only hourly parking rates posted. However, in neither case is the Violation Fine disclosed on either the posted signs or through the QR code. On information and belief, the removal of gates and the use of inconspicuous signs requiring payment through a QR code and the nondisclosure of the Violation Fines is an intentional business strategy used by Metropolis to manufacture and encourage an individual's non-compliance—so Metropolis can later coerce the Violation Fine from an individual and generate higher returns for itself.

35. Metropolis removes the standard garage barriers to entry (gates that would require a ticket and payment upon departure) and installs its video monitoring system which instead tracks and documents a vehicle's license plate. As shown in the attached Notice, Metropolis's system takes a picture of an individual's vehicle, with a time stamp for entry and exit in calculating the unpaid fare and Violation Fine.[6]

36. Metropolis's "'drive in drive out' payment experience" is designed to extract higher payments from customers, resulting in higher returns for Metropolis and parking lot facility owners. A simple hypothetical example is shown in the following table. The table calculates the estimated revenue for a garage that has 3,000 daily visitors under two scenarios: a scenario with a normal entry gate system that requires 100% compliance, and the second scenario using Metropolis's barrier-less system, assuming a 20% nonpayment rate and a 90% Violation Fine collection rate. Under this basic example, **Metropolis's system generates 164% of the revenue from a traditional gate system, driven by Violation Fines**.

---

[6] *See* Ex. B, Notice of Parking Violation

|  | **Traditional Entry Gate System** | **Metropolis Automated System** |
|---|---:|---:|
| Cars Per Day | 3,000 | 3,000 |
| Paying Customers | 3,000 | 2,400 |
| Non-Paying Customers (20%) | 0 | 600 |
| Revenue for $15 Parking Charge | $45,000 | $36,000 |
| Number of Customers Subject to Violation Fine of $70 | 0 | 600 |
| Number of Customers who Pay Violation Fine (90%) | 0 | 540 |
| Violation Fine Revenue | 0 | $37,800 |
| **Total Revenue** | **$45,000** | **$73,800** |

37. On information and belief, the non-barriered QR-code system is a design that Metropolis knows causes individuals to not pay for parking. The design of this system is intentional and was created for a specific goal: extracting unlawful Violation Fines.

38. Metropolis' system intentionally encourages minor technical nonpayment or underpayments of garage parking fees such that a large arbitrary and unauthorized Violation Fine can be threatened and collected from a significant portion of its customers. However, even in the instance where a customer intentionally does not pay a posted parking rate, that customer is still not liable to Metropolis for any arbitrary "Violation Fine" it chooses to levy in addition to a legitimate posted parking fee.

**B.    Metropolis's collection of the Violation Fine intimidates consumers into paying inflated amounts.**

39. Without any lawful authority, Metropolis sends individuals who fail to pay for parking a form "Notice of Parking Violation" through the U.S. mail.[7] The clear goal of the Notice is to inflate any amounts owed and intimidate consumers into paying these inflated amounts.

40. In the attached example, the Notice claims that Plaintiff Goodban committed a "violation" by not paying the required parking fare of $5 and includes a Violation Fine of $70.25—**fining Plaintiff Goodman over $1,405% for having exited the garage only 16 minutes after entering**.[8] Metropolis cannot lawfully assess a Violation Fine on behalf of a private party, and each of the Notices sent to individuals constitutes an unlawful and unconscionable act.

41. The form Notice intimidates individuals into paying the Violation Fine by including threating language such as, "all vehicles that fail to pay for parking violations may be subject to additional fees, referred to a dedicated collection agency or incur other legal action, future ticketing, booting and/or towing, at the sole discretion of Metropolis."[9] These threats imply authority that Metropolis simply does not have. Metropolis cannot boot a consumer's vehicle nor tow a consumer's vehicle for failing to pay the inflated and illegal Violation Fine.

42. The Violation Fine Scheme is unlawful because it allows Metropolis to inflate any potential debt (unpaid parking) by orders of magnitude without any authority to do so, and tricks and intimidates individuals into paying the inflated Violation Fine by threatening towing and booting, further fines, or legal action, which Metropolis has no authority to undertake.

---

[7] Ex. B, Notice.
[8] Plaintiffs Frankfort and Gutierrez each incurred violation fines of $30.25, which they paid.
[9] Ex. B, Notice.

## VII. CAUSES OF ACTION

A.   **Count One: Violation of the FDCPA**

43.   Plaintiffs incorporate the above allegations.

44.   This claim is asserted against Metropolis.

45.   Metropolis is a "debt collector" under the FDCPA, 15 U.S.C. § 1692a(6) because Metropolis mails Notices through the U.S. mail, and thereby "uses mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

46.   Metropolis has violated provisions of the FDCPA which prohibit:

   a. The "false representation of ... the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The Violation Fine falsely represents that (1) Metropolis is legally authorized to impose a fine, and (2) implies that the inflated Violation Fine is something that must be paid.

   b. The "representation or implication that nonpayment of any debt will result in . . . the seizure . . . of any property . . ." *Id.* § 1692e(4). In violation of this provision, Metropolis's form Notice falsely states that an individual's car may be booted or towed for failure to pay the fine, when Metropolis has no authority to do so.

   c. The "threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.* § 1692e(5). The form Notice claims that failure to pay the fine may result in dedicated collection or referral to an attorney. Metropolis cannot legally assess a fine, thus any threat regarding nonpayment violates this provision.

   d. The use of "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10). The fact the Notice claims a parking "violation" is deceptive because a private party cannot assess a violation. The Violation Fine falsely implies that Metropolis is acting under police powers of the state.

   e. The use of "unfair or unconscionable means to collect or attempt to collect any debt," including the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). The Violation Fine (that is contained in each of the form Notices sent by Metropolis) is a "fee" under this provision, and thus Metropolis has

systematically and repeatedly breached this provision and illegally collected such monies.

47. Metropolis's actions were intentional and did not result from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error.

48. Metropolis's actions have proximately caused direct injury to Plaintiffs and to the numerous Federal Class, consisting of the Violation Fine and any ancillary non-disclosed fees or costs. Plaintiffs and the Federal Class are also entitled to statutory damages under the FDCPA.

**B.    Count Two: Violation of TFDCPA**

49. Plaintiffs incorporate the above allegations.

50. Each Plaintiff is a "consumer" with a "consumer debt" under the TFDCPA because the parking cost and associated Violation Fine is "an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code §§ 392.001(1)–(2).

51. Metropolis is a "debt collector" involved in "debt collection" under the TFDCPA, because Metropolis's Notices constitute "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* §§ 392.001(5)–(6).

52. Metropolis has violated provisions of the TFDCPA that prohibit:

   a. threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings; or threatening to take an action prohibited by law. *Id.* §§ 392.301(7)–(8). Metropolis violates these provisions by illegally threatening that a consumer's car will be towed or booted, or the consumer may incur additional fees, future ticketing, referred to a dedicated collection agency, or incur other legal action. Metropolis, as a private company, has no authority to find and tow or boot a consumer's vehicle, nor refer the Violation Fine to a collection agency. Thus, Plaintiff's Notice, and each of the Notices sent to the Texas Subclass, each represent a violation of the Texas Finance Code.

    b. The use of "unfair or unconscionable means" to collect or attempt to "collect interest or a charge, fee, or expense incidental to the obligation" that is not expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." *Id.* § 392.303(a)(2). The Violation Fine (that is allegedly imposed in each of the Notices sent by Metropolis) is a "fee" under this provision, and thus Metropolis has systematically and repeatedly breached this provision and illegally collected such monies.

    c. Misrepresenting the character, extent, or amount of a consumer debt. *Id.* § 392.304(a)(8). Notice allegedly imposing a Violation Fine falsely represents that (1) Metropolis is legally authorized to impose a fine, and (2) implies that the inflated Violation Fine is something that must be paid.

53. Metropolis's actions were not the result of a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error.

54. Metropolis's actions have proximately caused direct injury to Plaintiffs and to the Texas Subclass, consisting of the Violation Fine and any undisclosed ancillary fees or costs. Plaintiffs and the Texas Subclass are also entitled to statutory damages.

**C.**    **Count Three: Violation of DTPA**

55. Plaintiffs incorporate the above allegations.

56. In Texas, the DTPA allows Plaintiffs to bring an action against any person who uses or employs false, misleading, or deceptive acts or practices. Tex. Bus. & Com. Code § 17.50(a)(1); *Miller v. Keyser*, 90 S.W.3d 712, 715 (Tex. 2002). Metropolis is considered a "person" under the DTPA. *Id.* § 17.45(3).

57. Plaintiffs, and members of the Texas Subclass are considered "consumers" under the DTPA because they are individuals who sought or acquired goods or services by purchase or lease. Tex. Bus. & Com. Code § 17.45(4). By entering the N. Ackard and Fannin Garages, and using a garage space, Plaintiffs sought the use of parking services.

58. Metropolis's Notice and Violation Fine Scheme, whereby it threatens fines, booting, and/or towing, further legal action, or referral to a collection agency is an intentional practice that is designed to take advantage of consumers' lack of knowledge to a grossly unfair degree.

59. Metropolis's Violation Fine Scheme constitutes an "unconscionable action" under the DTPA. Each mailed Notice is a separate act, and thus, Metropolis has violated the DTPA numerous times. *Id.* §§ 17.45(5) and 17.50(a)(3). In addition, Metropolis's actions of actually charging and collecting the Violation Fines and any non-posted ancillary fees are additional DTPA violations.

60. Metropolis's violations of the TFDCPA, set forth above, also constitute violations of the DTPA. Texas Finance Code 392.404.

61. Further, Metropolis has violated the DTPA through the following false, misleading, and deceptive acts:

   a. causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services. Tex. Bus. & Com. Code § 17.46(2). The fact the Notice claims a parking "violation" is confusing because a private party cannot assess a violation. The Notice, allegedly imposing a Violation Fine, falsely implies that Metropolis is acting under or has sponsorship of police powers of the state.

   b. representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. *Id.* § 17.46(b)(12). With its form Notice, Metropolis has represented to Plaintiffs and the Texas Subclass that failing to pay for parking grants Metropolis the right to levy the Violation Fine, grants Metropolis the right to seize a consumer's vehicle through booting or towing, and allows legal action to collect the Violation fine.

62. Defendants have caused and proximately caused direct injury to Plaintiffs and the Texas Subclass, who have paid the Violation Fine or any non-posted ancillary fees or costs.

63. Because Metropolis intentionally perpetrated its Violation Fine Scheme, Plaintiffs and the Texas Subclass are entitled to recover treble damages. *Id.* § 17.50(b)(1).

### D. Count Four: Injunctive Relief

64. Plaintiffs incorporate the above allegations.

65. This claim is asserted against Metropolis.

66. Plaintiffs move for injunctive relief to prevent Metropolis from perpetrating the Violation Fine Scheme. Plaintiffs request a declaration and permanent injunction from the Court requiring Metropolis to overhaul how it collects Violation Fines by providing statutory disclosures and notices or eliminate the Violation Fine Scheme altogether.

67. Metropolis's actions of mailing, attempting to collect, and collecting Violation Fines apply generally to the Texas Subclass, such that injunctive relief is appropriate. Metropolis's Violation Fine Scheme is an intentional business practice that applies to the Texas Subclass. Specific to the Texas Subclass, the DTPA expressly authorizes injunctive relief. *See* Tex. Bus. & Comm. Code § 17.50(b)(2). In addition, the TFDCPA also specifically authorizes injunctive relief. Texas Finance Code at 392.403(a)(1).

68. Plaintiffs have suffered an irreparable injury, including lost time and mental anguish from Metropolis's illegal threats and simple monetary damages are inadequate to compensate for this injury.

69. Balancing the hardships between Plaintiffs and Metropolis, a remedy in equity is warranted to prevent Metropolis from continuing to illegally extract Violation Fines from its consumers. The public interest would not be disserved by a permanent injunction, because without this equitable relief, Metropolis would be free to continue extracting illegal Violation Fines after this lawsuit.

70. Thus, Plaintiffs request a declaration from this Court and permanent injunctive relief to end Metropolis's illegal scheme. Specifically, Plaintiffs request the following:

   a. Require Metropolis to clearly post parking rates at all facilities for all times of the day;

   b. Prevent Metropolis from attempting to charge, or from collecting "fines" or other monies which exceed the posted parking rate;

   c. Require Metropolis to install any necessary facilities (e.g., kiosks) that would accept alternative methods of payment for all facilities where a QR Code is the only method of payment; and

   d. Prevent Metropolis from threatening to tow vehicles, boot vehicles, refer consumers to collection agencies, levy additional fines or charges, or take any other actions in violation of the TFDCPA.

## VIII.  DEMAND FOR JURY TRIAL

71. Plaintiffs hereby request a trial by jury on all issues triable by right to a jury.

## IX.  RELIEF REQUESTED

**WHEREFORE**, Plaintiffs pray for the following relief:

(a) An order certifying this case to proceed as a class action, designating Plaintiffs as the Federal Class and Texas Subclass representatives, and designating the undersigned as counsel for each class;

(b) A declaration and injunctive relief altering or suspending Metropolis's Violation Fine Scheme;

(c) actual damages;

(d) statutory damages

(e) exemplary and/or punitive damages;

(f) reasonable and necessary attorneys' fees;

(g) prejudgment and post-judgment interest;

(h) court costs; and

(i) general relief.

Respectfully submitted,

THE LANIER LAW FIRM, P.C.

By: */s/ W. Mark Lanier*
W. Mark Lanier
mark.lanier@lanierlawfirm.com
Texas Bar No. 11934600
Kevin P. Parker
kevin.parker@lanierlawfirm.com
Texas Bar No. 15494020
Alex J. Brown
alex.brown@lanierlawfirm.com
Texas Bar No. 24026964
Alfred Mackenzie
alfred.mackenzie@lanierlawfirm.com
Texas Bar No. 12761550

10940 W. Sam Houston Pkwy N, Suite 100
Houston, TX 77064
Tel.: (713) 659-5200

-and-

VARTABEDIAN HESTER & HAYNES LLP

Craig A. Haynes
Texas Bar No. 09284020
craig.haynes@vhh.law
Robert C. Vartabedian
rob.vartabedian@vhh.law
Texas Bar No. 24053534
Daniella P. Main
Texas Bar No. 24120235
daniella.main@vhh.law

2200 Ross Avenue, Suite 4600E
Dallas, TX 75201
Tel.: 469-654-1632

*Attorneys for Plaintiffs*