IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TODD FRANKFORT, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 3: 24-CV-02283-L |
| | § | |
| METROPOLIS | § | |
| TECHNOLOGIES, INC., | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Metropolis Technologies, Inc.'s ("Metropolis")

Motion to Dismiss all claims asserted by Plaintiffs Todd Frankfort, Curtis Goodban,

and Sarina Gutierrez[1] (collectively, "Plaintiffs"), pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, (Dkt. No. 11), accompanied by a brief in support

(Dkt. No. 12 ("D. Br.")), and an appendix (Dkt. No. 13) ("D. App.").)  Also before

the Court is Plaintiffs' Motion for Class Certification, filed on December 5, 2024.

(Dkt. No. 14.)  United States District Judge Sam A. Lindsay referred the motions to

the undersigned United States magistrate judge for hearing, if necessary, and

proposed findings and recommendation for disposition of the motions.  (Dkt. Nos.

16, 21.)

---

[1] In their response, Plaintiffs advise that Sarina Gutierrez is no longer proceeding as a class representative (*see* D. Br. at 1 n.1), but the record reflects no corrective pleadings have yet been filed to reflect this change.

On February 3, 2025, the Court issued an order staying both discovery and Defendant's deadline to file a response to Plaintiffs' motion for class certification until the Court rules on the present motion to dismiss.  (Dkt. No. 25.)  Based on the relevant findings and applicable law, the undersigned recommends that Metropolis's motion to dismiss (Dkt. No. 11) be **GRANTED**, and Plaintiffs' motion for class certification (Dkt. No. 14) be **DENIED** as moot.

## I. BACKGROUND

On September 6, 2024, Plaintiffs filed a putative class action complaint against Metropolis asserting four causes of action: three damages counts under the Fair Debt Collection Practices Act ("FDCPA") (Count One), the Texas Debt Collection Act ("TDCA")[2] (Count Two), and the Texas Deceptive Trade Practices Act ("DTPA") (Count Three), and one for injunctive relief under the DTPA and the TDCA (Count Four).  (Dkt. No. 1 ("Compl.").)

Plaintiffs allege subject matter jurisdiction pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 ("CAFA") because: (1) there are 100 or more Class members, (2) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (3) there is minimal diversity because at least one member of the class of plaintiffs and one defendant are citizens of different states.  (Compl. ¶ 32.)  Plaintiffs additionally allege subject matter

---

[2] Both parties refer to this Act as the Texas Fair Debt Collection Practices Act, or the "TFDCPA," but the Texas legislature and state courts refer to it as the Texas Debt Collection Act ("TDCA") and the undersigned refers to it is as such.

jurisdiction relative to Plaintiffs' FDCPA claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) and supplemental jurisdiction relative to Plaintiffs' state-law claims under the TDCA and DTPA pursuant to 28 U.S.C. § 1367(a). (*Id.*) The undersigned notes that Metropolis has not objected to Plaintiffs' assertion of CAFA jurisdiction or asserted any basis that would divest the district court of subject matter jurisdiction over the claims in this lawsuit.

Metropolis filed the present motion to dismiss on December 12, 2024 (Dkt. No. 11), after which Plaintiffs filed a response on January 22, 2025 (Dkt. No. 22 ("Resp.")), and Metropolis filed a reply on February 19, 2025 (Dkt. No. 26 ("Reply")). Accordingly, the motion is ripe for decision.

Plaintiffs allege the following facts in their complaint. Metropolis operates hundreds of parking facilities across the United States, using a "drive-in, drive-out" system. (Compl. ¶ 22.) Individuals may park their cars in a particular parking spot, for a particular amount of time in exchange for a pre-set fee. (*Id.* ¶ 32.) Metropolis equips its parking facilities with monitoring technology that identifies and tracks vehicles entering and leaving its facilities. (*Id.* ¶ 5.) This technology photographs an individual's vehicle at the time of entry and exit to calculate the parking fee, allowing the garages to operate without entry and exit gates. Instead, consumers pay online by scanning a posted QR code with a smart device. (*Id.*)

According to Plaintiffs, these Metropolis parking facilities either have no rates posted or have only hourly rates posted, but in either case, Metropolis does not disclose the Violation Fine. (Compl. ¶ 34.) Plaintiffs allege that this payment system

causes consumers "to fail to pay the required parking charge." (*Id.* ¶ 6.) When a consumer leaves a Metropolis garage without paying via the posted QR code, Metropolis mails a form "Notice of Parking Violation" ("Notice") to the vehicle owner, charging the unpaid parking charge and a "Violation Fine." (*Id.*) The Notice contains information about (i) when the consumer's car was in the lot, (ii) the unpaid fare owed, and (iii) the non-payment fine. (*See* Dkt. No. 1-2.) It also includes a statement that "all vehicles that fail to pay for parking violations may be subject to additional fees, referred to a dedicated collection agency or incur other legal action, future ticketing, booting and/or towing, at the sole discretion of Metropolis." (*Id.*) Following this statement, the Notice states "Metropolis is not a debt collection agency." (*Id.*) The Violation Fine and the Notice are the bases for Plaintiffs' claims.

Plaintiff Goodban parked at a Metropolis garage at 500 N. Akard Street, Dallas Texas on June 11, 2024, staying for 16 minutes and incurring a parking fee of $5.00. (Compl. ¶ 32.) After Goodban failed to pay the required parking fee, he received in the mail a Notice that requested payment of the $5.00 parking fee along with a violation fine of $70.25. (*Id.* ¶ 40; *see also* Dkt. No. 1-2.) Plaintiffs Frankfort and Gutierrez each parked at a Metropolis garage at the Texas Women's Hospital at 7600 Fannin Street, Houston, Texas, in which the rates for their respective stays were $9.00 and $12.00. (*Id.* ¶ 33.) After failing to pay their respective parking fees, they each incurred a $30.25 violation fine, which they both paid. (*Id.* ¶ 40 n. 8.) Plaintiffs do not state why they failed to pay the parking fares. Nor do they allege

that they were confused by the posted signs or did not pay due to other unarticulated concerns.

Plaintiffs allege that "the removal of gates and the use of inconspicuous signs requiring payment through a QR code and the nondisclosure of the Violation Fines is an intentional business strategy" to encourage non-compliance so Metropolis can "later coerce the Violation Fine" from it parking patrons to "generate higher returns for itself." (Compl. ¶ 34.)

## II. LEGAL STANDARDS

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 485 F.3d 191, 205-06 (5th Cir. 2007). Such a motion therefore is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility

standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557 (cleaned up)); *see also Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) (unpublished) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* And so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)).

A court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999). When a party presents "matters outside the pleadings" with

a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n. 3 (5th Cir.1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir.2007). "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 498-99 (quotations omitted); *accord Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir.2003). Attachments falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment. *See Benchmark Electronics*, 343 F.3d at 725.

Here, Plaintiffs attached to their complaint a copy of a Notice of Parking Violation received by Plaintiff Goodban. (*See* Dkt. No. 1-2.) This document is therefore considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205; *see also Gipson v. Deutsche Bank Nat. Tr. Co.*, No. 3:13-CV-4820-L, 2015 WL

- 7 -

2069583, at *4 (N.D. Tex. May 4, 2015). Metropolis attached to its motion to dismiss images of notices posted at the Fannin Garage and the N. Ackard Garage, the two parking lots referenced in Plaintiffs' complaint (*see* Compl. ¶ 32), which expressly warn that failure to pay the parking fee via the QR code will result in "penalties or fines." (*See* D. App. 4 at ¶¶ 5-7 (Declaration of Christina Murray)[3]; D. App. 6-12.) Metropolis contends that these posted notices represent the terms of the debt alleged in the complaint. (*See* D. Br. at 3, 10.) These notices are referenced in Plaintiffs' complaint (*see* Compl. ¶ 34 (alleging that signs posted at Metropolis garages fail to disclose the Violation Fines)) and are central to their theory of the case; they are therefore considered part of the pleadings. *See Collins*, 224 F.3d at 498-99. Therefore, the undersigned concludes that conversion of Metropolis's motion to dismiss into a motion for summary judgment is not necessary. *See id.*; *Katrina Canal Breaches Litig.*, 495 F.3d at 205; *see also Gipson*, 2015 WL 2069583, at *4; *Burgess v. RAB, Inc.*, No. 3:23-CV-2845-L-BN, 2024 WL 3237183, at *2 (N.D. Tex. June 6, 2024), *adopted*, 2024 WL 3240665 (N.D. Tex. June 28, 2024).

### III. ANALYSIS

As noted above, Plaintiffs assert causes of action under the FDCPA, the TDCA, and the DTPA, as well as a cause of action for injunctive relief. Plaintiffs claim that Metropolis's practice of "collecting undisclosed, arbitrary, and

---

[3] Ms. Murray is Director of Central Operations at Metropolis; she has been in her current role since August 2022; and her job responsibilities involve, among other things, developing Metropolis's parking enforcement strategies. (*See* D. App. 3 at ¶ 1.)

unconscionable violation fines, using illegal threats" violates the FDCPA, the TDCA, and the DTPA.  (*See* Resp. at 2.)

Metropolis argues that Plaintiffs have not alleged sufficient facts to render their FDCPA and DCPA claims plausible and their conclusory allegations that Metropolis's payment system is an unlawful "scheme" that "tricks and intimidates individuals into paying the inflated Violation Fine" (*see, e.g.*, Compl. ¶ 42) is not enough to entitle them to any relief.  (*See* D. Br. at 1.)  More specifically, Metropolis argues that (1) Plaintiffs do not plead sufficient facts to support their claim that Metropolis is a "debt collector" regulated by the FDCPA, which warrants dismissal of Count One; (2) the Notice about which Plaintiffs complain does not violate the FDCPA, the TDCA, or the DTPA, which warrants dismissal of the complaint in its entirety; (3) Plaintiffs failed to plead reliance on Metropolis's alleged scheme, that they were harmed by the alleged scheme, or that the alleged scheme was unconscionable as defined by the DTPA, which mandates dismissal of Count Three; and (4) Plaintiffs lack standing to bring any claim for injunctive relief, which warrants dismissal of Count Four.  (*See* D. Br. at 1-2.)

In response, Plaintiffs maintain that they have plausibly alleged their claims, including that Metropolis's Notices violate the DTPA, TDCA, and FDCPA, and Metropolis's collection of a Violation Fine "in some arbitrary amount" violates the FDCPA's and the TDCA's prohibition against collecting any amount that is not expressly authorized by an agreement or by law and that Metropolis uses illegal and unconscionable threats to intimidate parkers into paying the Violation Fine,

including threatening actions that only a state or government actor could take such as issuing ticket or seizing a vehicle by booting it or towing it.. (*See* Resp. at 4-15.) Plaintiffs further maintain that their complaint sufficiently alleges that Metropolis is a debt collector under the TDCA and the FDCPA (*id*. at 15-21), and they have standing to seek injunctive relieve (*id*. at 21-24). Finally, should the Court find Plaintiffs' allegations insufficient to sustain claims or the relief requested, Plaintiffs request leave to amend their complaint. (*Id*. at 24-25.)

**A.    Applicable Law.**

   **1.    Fair Debt Collection Practices Act (FDCPA).**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting 15 U.S.C. § 1692(e)). To state a claim under the FDCPA, a plaintiff must demonstrate that: "(1) [he] has been the object of a collection activity arising from consumer debt, (2) the defendant is a debt collector under the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA." *Vazzano v. Receivable Mgmt. Servs., LLC*, 621 F. Supp. 3d 700, 711 n.18 (N.D. Tex. 2022).

Whether a defendant is a debt collector is often a threshold question for determining FDCPA liability. *See e.g.*, *Gipson*, 2013 WL 3746003, at *2 (dismissing FDCPA claim because plaintiffs failed to plead sufficient facts that defendant

qualified as a debt collector under the statute).  The FDCPA only regulates "debt

collector[s]."  15 U.S.C. § 1692a(6); *see, e.g.*, *Obduskey v. McCarthy & Holthus LLP*, 586

U.S. 466, 468 (2019).  Under either of the statute's two definitions:

> The term 'debt collector' means [1] any person who uses any
> instrumentality of interstate commerce or the mails in any business the
> principal purpose of which is the collection of any debts, or [2] who
> regularly collects or attempts to collect, directly or indirectly, debts
> owed or due or asserted to be *owed or due another*.

15 U.S.C. § 1692a(6) (emphasis added).  The statute explicitly excludes any person

collecting or attempting to collect any debt owed that "concerns a debt which was

originated by such person[.]"  15 U.S.C. § 1692a(6)(F)(ii).

With respect to letters to consumers (such as the Notice), the Fifth Circuit

instructs the Court to "evaluate any potential deception in [a] letter under an

unsophisticated or least sophisticated consumer standard." *Goswami v. Am.

Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004).  "That is, in determining

whether the defendant's actions are deceptive under the FDCPA [the Court] must

assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with

creditors." *Id.*  Yet at the same time, the Court does not consider the debtor as "tied

to the 'very last rung on the [intelligence or] sophistication ladder.'" *Id.* (quoting

*Taylor v. Perrin, Landry deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997)).

The Fifth Circuit generally treats the application of the unsophisticated consumer

standard as a question of law. *Manuel v. Merchs. and Pro. Bureau, Inc.*, 956 F.3d 822,

826 (5th Cir. 2020).  And while the issue of whether a collection letter is misleading

is usually a question of fact, dismissal is appropriate when it is apparent from the

letter that no significant fraction of the population would be misled by it. *See Daugherty*, 836 F.3d at 512 (quoting *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014)).

"FDCPA claims may be dismissed at the Rule 12(b)(6) stage for failure to state a claim if, as a matter of law, the letters are not deceptive based on the language and placement of a disclaimer. Stated another way, dismissal is appropriate when it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." *Bracken v. Portfolio Recovery Assoc., LLC*, No. 3:20-CV-1991-L-BK, 2021 WL 8441769, at *2 (N.D. Tex. Aug. 25, 2021), *adopted*, 2021 WL 8441747 (N.D. Tex. Sept. 9, 2021) (cleaned up) (citing *Gonzalez v. Kay*, 577 F.3d 600, 606 (5th Cir. 2009); *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 512 (5th Cir. 2016)); *see also Christie v. Cont. Callers, Inc.*, No. 4:20-CV-00518-P, 2021 WL 689548, at *4 (N.D. Tex. Feb. 23, 2021).

### 2. Texas Debt Collection Act (TDCA).

The elements of a TDCA claim are: (1) the debt is consumer debt; (2) the defendant is a debt collector, as defined by the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful act. *Putty v. Fed. Nat'l Mortg. Ass'n*, No. 3:16-CV-2562-D, 2017 WL 5070423, at *3 (N.D. Tex. Nov. 3, 2017), *aff'd*, 736 F. App'x 484 (5th Cir. 2018).

The TDCA differs from its federal counterpart in that "[t]he [TDCA] defines a 'debt collector' as 'a person who directly or indirectly engages in debt collection'"

and "encompasses a creditor collecting its own debts as well as a third-party debt-collector." *Welch v. Wells Fargo Bank*, Civ. A. No. H-12-1468, 2012 WL 13047695, at *4 (N.D. Tex. Dec. 17, 2012) (quoting Tex. Fin. Code § 392.001(6), then citing Tex. Fin. Code §§ 392.001(3), (5)-(7)); *see also Genender v. Kirkwood*, 506 S.W.3d 508, 514 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("The TDCA has a two-tiered structure that includes both 'third-party debt collectors' . . . and 'debt collectors.'" (quoting Tex. Fin. Code § 392.001(6))).

The definition of a third-party debt collector under the TDCA incorporates the definition of a debt collector under the FDCPA, 15 U.S.C. § 1692a(6). *See Welch*, 2012 WL 13047695, at *4; *see also Wesner as Tr. of Charles Wesner, Jr. Living Tr. v. Southall*, No. 3:22-CV-0927-B, 2023 WL 3000623, at *8 (N.D. Tex. Apr. 18, 2023) (explaining that the TDCA's definition of "third-party debt collector" borrows the definition of "debt collector" from the FDCPA); Tex. Fin. Code § 392.001(7) ("'Third-party debt collector' [under the TDCA] means a debt collector, as defined by [the FDCPA.]"). And as previously explained, a "debt collector" under the FDCPA must be collecting a debt for another. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017). Therefore, a "third-party debt collector" under the TDCA must likewise be collecting a debt for another.

By contrast, a "debt collector" is "a person who directly or indirectly engages in debt collection[.]" Tex. Fin. Code § 392.001(6). Under the TDCA, "debt collection" is "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.*

§ 392.001(5).  "Although the TDCA does not explicitly state that a 'debt collector' is a person who engages in debt collection of a debt they originated, courts have given the TDCA this construction to reconcile the statute's somewhat circular terminology."  *Wesner*, 2023 WL 3000623, at *8 (citing *Scarbrough v. JPMorgan Chase Bank, N.A.*, 2022 WL 2373725, at *10 (S.D. Tex. June 2, 2022), *adopted*, 2022 WL 2359645 (S.D. Tex. June 30, 2022) (collecting cases)).)

### 3.  Texas Deceptive Trade Practices Act (DTPA).

The DTPA provides consumers with a cause of action for false, misleading, or deceptive acts or practices.  *See* Tex. Bus. & Com. Code § 17.50(a); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).  The elements of a DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury. *Windle v. Synthes USA Prods., LLC*, No. 3:11-CV-2591-D, 2012 WL 1252550, at *4 (N.D. Tex. Apr. 13, 2012) (citing *Amstadt*, 919 S.W.2d at 649).

"The question of whether a party is a consumer [under the DTPA] is a question of law."  *Gomez v. Wells Fargo Bank*, No. 3:10-CV-381-B, 2010 WL 2900351, at *3 (N.D. Tex. July 21, 2010) (citation omitted); *see Holland Mortgage & Inv. Corp. v. Bone*, 751 S.W.2d 515, 517 (Tex. App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.)). The DTPA defines a consumer as:

an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

Tex. Bus. & Com. Code § 17.45(4). The DTPA defines "goods" as "tangible chattels or real property purchased or leased for use." *Id*. § 17.45(1). It defines "services" as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." *Id*. § 17.45(2).

Plaintiffs' claim under the DTPA must also meet Rule 9(b)'s heightened pleading standards. *Univ. Baptist Church of Fort Worth v. Lexington Ins. Co.*, 346 F. Supp. 3d 880, 889 (N.D. Tex. 2018), *aff'd*, 787 F. App'x 194 (5th Cir. 2019); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires specifying "the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005); *see also Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

## B. Plaintiffs fail to plausibly allege that Metropolis is a debt collector as defined by the FDCPA.

Plaintiffs allege that, as a debt collector, Metropolis violated multiple provisions of the FDCPA, including that Metropolis falsely represents that it is legally authorized to impose a fine (violation of Section 1692e(2)(A); falsely represents that it has the authority to boot or tow an individual's vehicle for

nonpayment of the fine (violation of Section 1692e(4)); Metropolis is not legally authorized take any legal action for nonpayment of the fine (violation of Section 1692e(5)); the Notice is deceptive because it falsely implies that, in assessing the Violation Fine, Metropolis is acting under police powers of the state (violation of Section 1692e(10)); and the Violation Fine constitutes a "fee" by which Metropolis uses unfair or unconscionable means to collect or attempt to collect (violation of Section 692f(1)). (*See* Compl. ¶ 46.)

Plaintiffs fail to plausibly allege the second required element for all FDCPA claims: that Metropolis is a "debt collector" as defined by 15 U.S.C. § 1692a(6). As previously explained, the FDCPA only regulates "debt collector[s]," 15 U.S.C. § 1692a(6); *Obduskey*, 586 U.S. at 468, and the statute explicitly excludes any person collecting or attempting to collect any debt owed that "concerns a debt which was originated by such person," 15 U.S.C. § 1692a(6)(F)(ii). The allegations of the complaint and the attachments to it suggest that the principal purpose of Metropolis's business is operating parking facilities, not debt collecting.

According to Plaintiffs' factual allegations, Metropolis is "a new player in the parking industry" whose "leading-edge computer vision technology" uses "AI and machine learning to provide seamless parking solutions and maximize revenue for facility owners." (Compl. ¶¶ 2, 4 (citing Dkt. No. 1–1 at 2).) "Metropolis operates in over 40 U.S. metropolitan centers creating a "drive in and drive out" payment experience at parking facilities and enabling it to "capture revenue from more than five million consumers who do not have to stop and pay." (Compl. ¶¶ 2, 4, 6 (citing

Dkt. No. 1–1 at 2).)   Based on these allegations, it appears that collecting unpaid parking debts is incidental to Metropolis's parking technology business.

Plaintiffs maintain, however, that the allegations in their complaint demonstrate that Metropolis's principal purpose is debt collection because "the central feature of Metropolis's business model is its creation and collection of debts (parking fares and the associated violation fines) purportedly owed by consumers." (Resp. at 17 (citing Compl. ¶¶ 36-38, 42).)   Specifically, Plaintiffs allege that Metropolis's system:

- is designed to extract higher payments" (Compl. ¶ 36);

- is intentional and was created for a specific goal: extracting unlawful Violation Fines" (*id*. ¶ 37);

- intentionally encourages minor technical nonpayment or underpayments of garage parking fees such that a large arbitrary and unauthorized Violation Fine can be threatened and collected from a significant portion of its customers" (*id*. ¶ 38); and

- allows Metropolis to inflate any potential debt (unpaid parking) by orders of magnitude without any authority to do so, and tricks and intimidates individuals into paying the inflated Violation Fine (*id*. ¶ 42).

(*Id*.)   But these statements amount to little more than "legal conclusions; mere labels; [t]hreadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement," and the Court cannot presume labels or legal conclusions as true.   *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (internal quotations and citations omitted).

Plaintiffs' conclusory allegations do not convert Metropolis's principal purpose from parking facility operations to the "creation and collection of debts."

(*See* Resp. at 14, 16–17 (citing Compl. 1, ¶¶ 34, 36, 42).)  The court is not required to "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir.2010) (citation omitted).  Accordingly, Plaintiffs' conclusory characterization of Metropolis's ticketless entry system as a "scheme" "designed to extract higher payment from customers" (Compl. ¶ 36) fails to allege that Metropolis's principal business is debt collection, rather than a parking garage operation.  *Bent v. Mackie Wolf Zientz & Mann, P.C.*, No. 3:13-CV-2038-D, 2013 WL 4551614, at *3 (N.D. Tex. Aug. 28, 2013) ("Plaintiffs' assertion that Defendant undertook the role of 'debt collector' is a legal conclusion that courts are not bound to accept as true.")

As noted above, the statute explicitly excludes any person collecting debts originated by itself.  *See* 15 U.S.C. § 1692a(6)(F)(ii).  Plaintiffs argue that this exclusion does not apply to Metropolis because Metropolis "partners with entities and persons that own, manage or otherwise control parking facilities," it regularly collects debts "owed or due another."  (Resp. at 19 (citing Compl. ¶¶ 5, 36).)   But Plaintiffs do not allege any facts regarding the particulars of these alleged partnerships, including the nature and extent of the relationship, or any entities with whom Metropolis allegedly partners.  Plaintiffs also do not allege that Metropolis is a third-party agent, collecting debts for an unnamed "partner" or that Metropolis tried to collect debts that parkers owed to unnamed "facility owners" that Plaintiffs "belie[ve]" are Metropolis "partner[s]."  (*See id*.)

Plaintiffs argue that unresolved fact questions regarding this issue preclude dismissal of their FDCPA claim (Resp. at 19-20), but this argument is unavailing as Plaintiffs' allegations are insufficient to support a reasonable inference that Metropolis is collecting debts Plaintiffs owed to "entities and persons" other than Metropolis itself.  (*See* Compl. ¶ 5.)  Therefore, Plaintiffs' allegations do not pass the threshold from possibility to plausibility.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal citations and quotation marks omitted).

Because Plaintiffs fail to plausibly allege that Metropolis is a "debt collector" as defined by 15 U.S.C. § 1692a(6), their FDCPA claim is not plausibly alleged and should be dismissed.  *See, e.g.*, *Mason v. Ocwen Loan Servicing, LLC*, 740 F. App'x 451, 452 (5th Cir. 2018) ("The district court did not err in dismissing [Plaintiff]'s FDCPA claim because [Defendant] was not a debt collector under the Act.").

## C.    Plaintiffs' TDCA claim should be dismissed because they fail to plausibly allege that Metropolis committed any wrongful acts against them.

As explained above, the TDCA differs from its federal counterpart to the extent that "[t]he TDCPA defines a 'debt collector' as 'a person who directly or indirectly engages in debt collection'" and "encompasses a creditor collecting its own debts as well as a third-party debt-collector."  *Welch*, 2012 WL 13047695, at *4 (internal citations and quotations omitted).  Here, Plaintiffs allege that Metropolis is a "debt collector" involved in "debt collection" under the TDCA, because the

Notices constitute "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." (Compl. ¶ 51 (citing Tex. Fin. Code §§ 392.001(5)–(6)).) Accordingly, dismissal of Plaintiffs' TDCA claim is not warranted on the basis that Metropolis is not a debt collector.

Despite the difference in the TDCA's and FDCPA's definition of debt collector, Plaintiffs' TDCA and FDCPA claims share in common the essential element that Metropolis must have committed a wrongful act against them. *See Putty*, 2017 WL 5070423, at *3. Courts have noted the relative paucity of precedent under the Texas statute, but "conduct prohibited under the TDCA is coextensive with that prohibited under the FDCPA, at least insofar as '[t]he same actions that are unlawful under the FDCPA are also unlawful under the TDCA.'" *Palmer v. ProCollect, Inc.*, No. 6:19-CV-82-JDK, 2020 WL 4677570, at *6 (E.D. Tex. May 5, 2020) (granting summary judgment on TFDCA and FDCPA claims "for the same reasons") (citations omitted).

The FDCPA "prohibits the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 510–11 (5th Cir. 2016) (quoting 15 U.S.C. § 1692e). Among other things, "the FDCPA prohibits '[t]he false representation of . . . the character, amount, or legal status of any debt[.]'" *Salinas v. R.A. Rogers, Inc.*, 952 F.3d 680, 683 (5th Cir. 2020) (quoting 15 U.S.C. § 1692e(2)(A)). "It is also a violation of the FDCPA to use 'any false representation or deceptive means to collect

or attempt to collect any debt or to obtain information concerning a consumer.'" *Id.* (quoting 15 U.S.C. § 1692e(10)).

The FDCPA also prohibits the use of "unfair or unconscionable means" by a debt collector "to collect or attempt to collect any debt." In particular, the relevant provision states that the following conduct constitutes a violation: "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). "Whether the collection of a debt violates Section 1692f(1) depends solely on two factors: (1) whether the debt agreement explicitly authorizes the charge; or (2) whether the charge is permitted by law. *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir.2003). Plaintiffs' FDCPA claim focuses on the former—that the Violation Fine imposed by Metropolis is not expressly authorized by the agreement creating the obligation. (*See* Compl. ¶¶ 46, 52; *see also* Resp. at 5.)

The TDCA similarly "prohibits debt collectors from using threats, coercion, or other wrongful practices to collect consumer debts." *Rentfrow v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 4:19-CV-3507, 2020 WL 1893558, at *5 (S.D. Tex. 2020), *adopted*, 2020 WL 1891848, *5 (S.D. Tex. 2020) (citing *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986)).

Plaintiffs' allegations of Metropolis's wrongful conduct include the following: (1) illegally threatening that a consumer's car will be towed or booted, or the consumer may incur additional fees, future ticketing, referred to a dedicated

collection agency, or incur other legal action; (2) using "unfair or unconscionable means" to collect or attempt to collect a "fee" (the Violation Fine) that is not expressly authorized by an agreement or by law; and (3) misrepresenting that it is legally authorized to impose the Violation Fine.  (*See* Compl. ¶¶ 46, 52.)

First, Plaintiffs allege that the Violation Fine is not "expressly authorized by the agreement creating the debt." (Compl. ¶ 46(e); 52(c).)  Metropolis argues in response that the notices posted at the two parking lots referenced in Plaintiffs' complaint (D. App. 6-12) represent the terms of the debt alleged in the complaint and expressly authorize Metropolis to assess fines for failures to pay the parking fee.  (*See* D. Br. at 3, 10, 19-22; *see also* D. App. 4 at ¶¶ 5-7.)  Therefore, argues Metropolis, the Violation Fine was authorized, and the Notice does not violate the FDCPA or the TDCA.  (*See* D. Br. at 11.)

Although Plaintiffs refute the existence of any agreement between them and Metropolis (*see, e.g.*, Resp. at 5 n.5), their attempt to state claims for relief under the FDCPA and the TDCA necessarily presupposes that any actionable debt underlying those claims arose from a contract.  (*See* Compl. ¶¶ 46(e), 52(b) (alleging wrongful conduct under the FDCPA and the TDCA based on Metropolis's failure to comply with an agreement).)  Considering the pleadings, including the complaint, the motion, and the attachments thereto, the undersigned concludes "that contract law is the source of the obligation at issue here." *Franklin v. Parking Revenue Recovery Servs., Inc.*, 832 F.3d 741, 744 (7th Cir. 2016) (holding that the unpaid parking fees and nonpayment penalties were "debts" under the FDCPA because, by parking in the

lot, "a contract was formed obligating [the plaintiffs] to pay the stated price or pay a higher price if they left the parking lot without paying.")

As Plaintiffs correctly state, *Franklin* did not address whether a nonpayment charge violated the FDCPA (*see* Resp. at 8), but its analysis with respect to the creation of a debt arising under a contract formed when a customer parks in a parking garage is nevertheless persuasive. *See id.* As the Seventh Circuit explained, "[t]he crucial question is the legal source of the obligation," and when contract law forms the basis of the obligation to pay, the obligation to pay is an FDCPA "debt." *Id.* at 744-45; *see also Skeberdis v. Kinnally*, No. 17-CV-6261, 2018 WL 3068379, at *4 (N.D. Ill. June 21, 2018); *but see Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1075 (7th Cir. 2011) ("[T]he municipal fines levied against [plaintiff] cannot reasonably be understood as 'debts' arising from consensual consumer transactions for goods and services."); *Reid v. Am. Traffic Sols., Inc.*, No. 10-CV-204-JPG-DGW, 2010 WL 5289108, at *5 (S.D. Ill. Dec. 20, 2010) (fines for running red lights are not "debts" because "[t]hey are not the product of a negotiation or contract, explicit or implied, where the plaintiffs purchased the right to run red lights in order to accomplish personal or family purposes").

Just as in *Franklin*, the terms of the contracts at issue here, were located on the signs at the two parking lots at which Plaintiffs parked. Plaintiffs incorporate these signs into their complaint by premising their claims on debts and purchases and by alleging that "in neither case is the Violation Fine disclosed on either the posted signs or through the QR code." (*See* Compl. ¶ 34.) But this statement is controverted by

the photographs of the signs submitted as attachments to the Motion. (*See* D. App. 3-4, 5-12.) As previously explained these attachments are considered part of the pleadings because they are referred to in Plaintiffs' complaint and central to their claims and, therefore, may be properly considered without converting the motion to dismiss into a motion for summary judgment. *Collins*, 224 F.3d at 498-99; *Benchmark Electronics*, 343 F.3d at 725. Just as in *Franklin*, Plaintiffs here entered into contracts obligating them to pay the stated price or pay a higher price if they left without paying. *See Franklin*, 832 F.3d at 744. And contrary to Plaintiffs' claims, these signs clearly warn parkers that they will be subject to a fine or other penalties if they fail to pay for parking. The signs state: parking is "enforced 24/7," "pay before exiting," and "[f]ailure to complete payment will result in fine and/or towing at vehicle owner's expense." (*See* D. App. at 5–12.)

Plaintiffs contend that Metropolis nevertheless violated the TDCA because the amount of the Violation Fine is undisclosed prior to being levied, and because the amount is "arbitrary and unconscionable." (*See* Resp. at 2, 5-8.) Plaintiffs further contend that the Violation Fines are unenforceable either as an improper penalty for failing to pay the underlying parking fare or as an improper late fee under Texas law and therefore not part of any contract that may exist between Plaintiffs and Metropolis. (*See id*. at 6-9) (citing *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 766 (Tex. 2005); *Atrium Med. Ctr., LP v. Houston Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020).) Contrary to Plaintiffs' assertion, the possibility of incurring fines for

refusing to pay for parking was disclosed in the signs at the garages which comprise the agreements between Plaintiffs and Metropolis.

Plaintiffs also complain that the Violation Fines are "arbitrary and outrageous," but beyond labels, unsupported hypotheticals, and broad assertions, the factual allegations in their complaint do not support that contention.  (*See, e.g.*, Compl. ¶¶ 6, 38.)  For example, Plaintiffs allege that Metropolis's gateless system "intentionally encourages minor technical nonpayment," which "generates 164% of the revenue [that it would generate] from a traditional gate system, driven by Violation Fines."  (Compl. ¶¶ 36, 38.)  But Plaintiffs' calculations are based on mere conjecture such as unsupported assumptions regarding nonpayment rates and Violation Fine collection rates.  Plaintiffs speculate that Metropolis can "impose a $1,000 violation fine on someone who failed to pay a $15 parking fare" (*see* Resp. at 7-8), but this is not what the complaint alleges.  Rather, Plaintiffs allege that Plaintiff Goodban incurred a violation fine of $70.25 after failing to pay a $5.00 parking fee and Plaintiffs Frankfort and Gutierrez each incurred a $30.25 violation fine after failing to pay their respective parking fees of 9.00 and $12.00.  (Compl. ¶ 40.) Therefore, Plaintiffs' reliance on hypothetical or abstract facts is "insufficient to satisfy the plausibility requirements at the motion-to-dismiss stage."  *Duggan v. Dep't of the Air Force*, 617 F. App'x 321, 325 (5th Cir. 2015); *see also Iqbal*, 556 U.S. at 678.

Furthermore, Metropolis argues that the Violation Fines are not arbitrary because they "align with standard industry practice and are not disconnected from the losses that parking garage operators [ ] incur when customers do not pay for

parking.  (Reply at 6-7 (citing *Franklin*, 832 F.3d at 743 ($45 nonpayment penalty);

*Wilkinson v. Passport Labs, Inc.,* No. 22-10714, 2022 WL 4870793, at *1 (E.D. Mich.

Oct. 3, 2022) ($50 nonpayment penalty increasing to $100 if unpaid after 14 days);

*Ahmed v. Richland Holdings, Inc.*, No. 2:19-CV-1925 JCM (DJA), 2021 WL 769642, at

*4 (D. Nev. Feb. 26, 2021) (on motion to dismiss, holding that collection fee does

not violate FDCPA, when it is a standard practice in applicable industry).)  Thus,

even taking Plaintiffs' allegations as true, they fail to plead any credible facts

supporting their claim that the Violation Fines are arbitrary and outrageous.

Similarly baseless are Plaintiffs' allegations that the Notices contain illegal

threats and false representations, as well as the use of "unfair and unconscionable"

means for collection of the Violation Fine.  (*See* Compl. ¶ 46 (claims under the

FDCPA), ¶ 52 (claims under the TDCA), ¶ 61 (claims under the (DTPA).)  As

explained above, conduct prohibited under the TDCA is equivalent to conduct

prohibited under the FDCPA, because "[t]he same actions that are unlawful under

the FDCPA are also unlawful under the TDCA.*"  Palmer*, 2020 WL 4677570, at *6.

Likewise, courts evaluate the alleged deceptiveness of letters to consumers (the

Notices in this case) under the "least sophisticated consumer" standard for both

FDCPA and the TDCA claims.  *See Goswami*, 377 F.3d at 495; *Meroney v. Pharia,*

*LLC*, 688 F. Supp. 2d 550, 552 (N.D. Tex. 2009); *Rodriguez v. Fulton Friedman &*

*Gullace, LLP*, No. H-11-4592, 2012 WL 3756589, at *13 (S.D. Tex. Aug. 28, 2012)

(granting motion to dismiss "very similar" TFDCPA claims "[f]or the same reasons"

as for FDCPA claims using least sophisticated consumer standard); *Tarazon v. LTD*

*Fin. Servs., L.P.*, No. 7:18-CV-60, 2019 WL 13258507, at *4 (S.D. Tex. Jan. 31, 2019).

Under this standard, the Court must assume that the debtor is neither shrewd nor experienced in dealing with creditors. Thus, the standard "serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012) (quoting *Taylor v. Perrin, Landry deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997)); *see also Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645–46 (7th Cir. 2009) (noting that even the least sophisticated debtor is not a "dimwit," presumably has "rudimentary knowledge" about finances, and can make "basic logical deductions and inferences") (internal quotation marks omitted).

In this case, the undersigned concludes that the phrasing in the Notice is not false or deceptive as a matter of law, even from the standpoint of the least sophisticated or an unsophisticated consumer. *Taylor*, 103 F.3d at 1236. Taking first Plaintiffs' allegation that that the Notice implies that Metropolis was acting on behalf of the government or acting with a government's authority, Plaintiffs ignore the bold, all-capitalized disclaimer in the Notice:

> **THIS INVOICE IS PRIVATELY ISSUED, IS NOT
> ISSUED BY A GOVERNMENTAL AUTHORITY,
> AND IS NOT SUBJECT TO CRIMINAL PENALTIES**.

(Dkt. No. 1–2, at 2.)  This language expressly and unambiguously states that the "invoice" is not issued by a governmental authority but rather is issued by a private party.  Even unsophisticated consumers would not believe that Metropolis was acting under government authority given what the conspicuous disclaimer stated.  *Goswami*, 377 F.3d at 495.  Furthermore, under the least sophisticated consumer standard, the use of common words such as "fine" and "violation" to describe contractual penalties do not convey any affiliation with a governmental entity.  *See, e.g.*, *Agrelo v. Affinity Mgmt. Servs.*, *LLC*, 841 F.3d 944, 951 (11th Cir. 2016) (HOA "fine" was a debt under FDCPA); *Franklin*, 832 F.3d at 744 (parking "fine" for failure to pay at parking lot was private debt).

Plaintiffs argue that, despite this bold disclaimer, the least sophisticated consumer would be deceived into believing that Metropolis had government authority.  (*See* Resp. at 10.)  The undersigned disagrees.  The language of the disclaimer is sufficiently clear that even "the inexperienced, the untrained and the credulous" would understand that the Notice was not issued by a government authority.  *McMurray*, 687 F.3d at 669.  Furthermore, the Notice is clearly issued by Metropolis, as Metropolis's name and return address are printed at the top of the Notice, the Notice states "Metropolis is providing this courtesy notice[.];" the payment processing portal is www.payment.metropolis.io, and the Notice states "Metropolis is not a debt collection agency."  (Dkt. 1-2 at 2.)  Contrary to Plaintiffs' contention, this simple and clearly-worded language would not lead the least sophisticated consumer to believe that the Notice was issued or authorized by a

government authority. *See Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 877 (S.D. Tex. 2011).

Plaintiffs also claim that the "Violation Fine falsely implies that Metropolis is acting under the police powers of the state" and that "Metropolis cannot lawfully assess a Violation Fine on behalf of a private party." (Compl. ¶¶ 40, 46.) Both the FDCPA and the TDCA prohibit:

> 1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, . . . .
>
> * * *
>
> (9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

15 U.S.C. 1692e; *see also* Tex. Fin. Code Ann. § 392.304(9)-(10). The conduct about which Plaintiffs complain does not constitute prohibited government impersonation under these express prohibitions. "Courts have generally limited the application of § 1692e(9) to egregious situations where the debt collector overtly impersonates a government agency or where it attempts to hide its identity by using a false alias." *Osborn*, 821 F. Supp. 2d at 876 (quoting *Sullivan v. Credit Control Servs., Inc.*, 745 F.Supp.2d 2, 10 (D.Mass.2010)).

As explained above, the Notice neither overtly impersonates a government authority nor attempts to conceal Metropolis's identity. Because the Notice does not expressly invoke a government or use words that necessarily suggest affiliation or

endorsement by a government, it does not violate the FDCPA or the TFDCPA in that manner.

Plaintiffs next allege that the Notice "falsely states that an individual's car may be booted or towed for failure to pay the fine, when Metropolis has no authority to do so" and argue that these statements violate the FDCPA (§ 1692e(4)), the TFDCPA (§§ 392.301(7)–(8)), and the DTPA (§ 17.46(b)(12)). (Compl. ¶¶ 46(b), 52(a), 61(b).) Plaintiffs also argue that "Metropolis's threats of booting and/or towing are "plainly illegal" because "[b]y the time consumers receive a Notice, their vehicle has already left the Metropolis facility." (Compl. ¶ 7.)

First, Plaintiffs are wrong about Texas law. Metropolis can boot or tow vehicles if their operators refuse to pay for parking at Metropolis's garages. *See* Tex. Occ. Code § 2308.257(a) ("A parking facility owner may, without the consent of the owner or operator of an unauthorized vehicle, cause a boot to be installed on the vehicle in the parking facility[.]"); Tex. Occ. Code § 2308.252(a) ("A parking facility owner may, without the consent of the owner or operator of an unauthorized vehicle, cause the vehicle and any property on or in the vehicle to be removed and stored at a vehicle storage facility at the vehicle owner's or operator's expense[.]"). Plaintiffs do not allege that Metropolis did not or would not follow these conditions if they sought to tow or boot a vehicle in one of its parking facilities, and therefore, they plead no facts to support a plausible inference that Metropolis has no legal authority whatsoever to tow or boot a vehicle for failure to pay the fine.

Second, the Notice specifically states that failure to pay *may* be subject to

"*future* ticketing, booting and/or towing." (*See* Dkt. 1-1 at 2 (emphasis added).) This

statement appears after the disclaimer stating that the "invoice is privately issued, []

not issued by a governmental authority, and not subject to criminal penalties." (*See*

*id.*) Because a consumer must read the disclaimer before reading about Metropolis's

authority to boot or tow their vehicles, the least sophisticated consumer understands

that Metropolis, a private company, only has legal authority to boot or tow their

vehicles in one of Metropolis's parking facilities. "Although established to ease the

lot of the naive, the [least sophisticated consumer] standard does not go so far as to

provide solace to the willfully blind or non-observant. Even the least sophisticated

debtor is bound to read collection notices in their entirety." *Osborn*, 821 F. Supp. at

877 (citing *Campuzano–Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 299 (3d Cir.

2008)).

For all these reasons, the undersigned finds that Plaintiffs' have failed to

plausibly allege that Metropolis's efforts to enforce the terms of the posted parking

agreements were unconscionable, that Metropolis falsely impersonated or implied an

affiliation with a government authority, or that it illegally threatened to tow or boot

Plaintiffs' vehicles. Accordingly, Plaintiffs' TDCA claim should be dismissed.

**D.    Plaintiffs failed to plead reliance or unconscionability as required by the DTPA.**

Plaintiffs here plead three different causes of actions under the DTPA. First,

Plaintiffs allege that Metropolis committed unconscionable action through its

"scheme" to take advantage of consumers' lack of knowledge by "threaten[ing] fines, booting, and/or towing, further legal action, or referral to a collection agency." (*See* Compl. ¶ 58; *see also id*. ¶ 59 (alleging that these unconscionable actions occurred numerous times).)  Second, Plaintiffs allege Metropolis's violation of the TDCA constitutes a violation of the DTPA.  (*Id*. ¶ 60.)  Third, Plaintiffs allege that Metropolis violated the DTPA through false, misleading, and deceptive acts, including that "[t]he Notice . . . falsely implies that Metropolis is acting under or has sponsorship of police powers of the state" and has represented that it has an agreement that confers the right to levy the Violation Fine, boot or tow vehicles for failure to pay the fine, and pursue legal action to collect the Violation fine.  (*Id*. ¶ 61.)

The relevant provisions of the DTPA are Sections 17.46(b) and 17.50.  First, as explained above, under § 17.50(a) only a "consumer" has standing to maintain a private cause of action under these provisions of the DTPA.  Second, proving a violation of the DTPA requires a consumer to proceed down one of two different avenues.  Avenue number one requires showing that a defendant committed one or more of a laundry list of 33 "false, misleading, or deceptive acts or practices" enumerated under § 17.46(b) that were relied upon by the consumer to his detriment. *See*, *collectively*, *id*. at §§ 17.46(b) and 17.50(a)(1).  An alternative avenue to prove a violation of the DTPA involves showing that a defendant committed one of three violations enumerated under § 17.50(a)(2) ("breach of an express or implied warranty"), § 17.50(3) ("any unconscionable action"), or § 17.50(4) ("violation of Chapter 541, Insurance Code").  *Id*.

Although Plaintiffs allege that Metropolis's actions violate the enumerated divisions of § 17.46, they do not plead that their reliance on those alleged violations caused their injuries as required by § 17.50(a)(1)(B).  (*See* Compl. ¶¶ 60–61.)  Their bare references to § 17.46 violations are not enough; they must plead that they actually relied on a deceptive business practice and that caused their injury.  (*See* Compl. ¶¶ 58–59.)  Plaintiffs allege that a violation of the TDCA is also a violation of the DTPA (*see* Compl. ¶ 60 (citing Tex. Fin. Code § 392.404)), but this allegation must be disregarded.  Not only have Plaintiffs failed to plausibly allege a TDCA violation, *see supra* Section III.C., but § 392.404 merely states that a violation of the TDCA is a "deceptive trade practice" under the DTPA (just as those enumerated in § 17.46).  Plaintiffs must still plead reliance and causation.  *See* Tex. Fin. Code § 392.404).

The complaint also lacks sufficient factual allegations enabling a reasonable inference that Metropolis's actions are unconscionable under the DTPA.  The DTPA defines an unconscionable action as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."  Tex. Bus. & Com. Code § 17.45(5).  "'The term 'gross' should be given its ordinary meaning, and therefore, the resulting unfairness must be glaringly noticeable, flagrant, complete and unmitigated."  *Lon Smith & Assocs., Inc. v. Key*, 527 S.W.3d 604, 623 (Tex. App.—Fort Worth 2017, pet. denied) (quotation omitted).  "Case law uniformly holds . . .  [that] the unconscionable-act-or-course-of-action element of a DTPA section 17.50

- 33 -

unconscionability claim requires proof of each consumer's knowledge, ability, experience, or capacity." *Id.* at 624. Plaintiffs must plead sufficient facts to meet these substantive requirements and the heightened procedural requirements under 9(b). *See, e.g.*, *Lopez v. United Prop. & Cas. Ins. Co.*, 197 F. Supp. 3d 944, 951 (S.D. Tex. 2016) (applying Rule 9(b) to DTPA claim); *Kumar v. Panera Bread Co.*, No. 4:21-CV-03779, 2024 WL 4281018, at *4 (S.D. Tex. Sept. 24, 2024) (dismissing DTPA claim for unconscionable actions).

The complaint contains no facts leading to a plausible inference of unconscionability and does not satisfy Rule 9(b)'s requirements. First, as discussed above, Plaintiffs' general allegations of an unconscionable "Violation Fine Scheme" (*see generally* Compl.) rely on unsupported hypotheticals and broad assertions that are not supported by any factual allegations in Plaintiffs' complaint, and therefore, fail to plausibly allege an "unconscionable" practice. *See supra* Section III.C.

Second, Plaintiffs fail to plead their own individual lack of knowledge; nor do they allege that they did not know or understand the terms under which they parked in Metropolis's garages, and it is unclear why Plaintiffs failed to pay for parking. The scheme is only unconscionable if it took advantage of Plaintiffs in some way. The lack of allegations regarding why Plaintiffs individually lacked knowledge or the ability to follow the Metropolis signs and pay the parking fee is fatal to their DTPA claim.

Finally, even if Plaintiffs pled individual facts regarding their own knowledge, the alleged facts in the complaint do not rise to the level of unconscionability.

Plaintiffs do not allege facts showing that Metropolis, or the Notice, took advantage of them "to a grossly unfair degree." *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001); *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 687 (N.D. Tex. 2006) ("[Plaintiff] certainly has not alleged that the defendants took unfair advantage of him in a way that was flagrant or glaringly noticeable."). Plaintiffs chose to park at a parking garage and did not pay for the parking despite signs warning of fines.

Based on the lack of any factual allegations—other than Plaintiffs' broad characterizations of Metropolis's gateless parking technology as an intentional scheme to encourage nonpayment of parking fees and intimidate parkers into paying the Violation Fine—Plaintiffs fail to plausibly allege that Metropolis took advantage of their lack of knowledge to a grossly unfair degree. Therefore, Plaintiffs have failed to plausibly allege a violation of the DTPA.

## E.    Plaintiffs fail to state a claim for injunctive relief.

An equitable remedy, such as a declaratory judgment or injunctive relief, is not an independent cause of action. *See Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 924 (N.D. Tex., Feb. 24, 2014). Instead, such relief depends upon the existence of an underlying judicially remediable right. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Accordingly, because Plaintiffs does not adequately plead any plausible underlying legal claims under the FDCPA, the TDCA, or the DTPA, they are not entitled to any declaratory or other equitable relief.

**F.    Plaintiffs should be granted leave to amend.**

Plaintiffs assert that any pleading deficiencies can be cured by amendment and request leave to amend should the Court find that Plaintiffs fail to state any of their claims.  (*See* Resp. at 24-25.)

Leave to amend should be freely granted when justice requires.  Fed. R. Civ. P. 15(a)(2).  Actions are not normally dismissed with prejudice without giving plaintiff an opportunity to amend unless the plaintiff has previously refused to do so, or the plaintiff has made its best case.  *Jackson v. Select Portfolio Servicing*, No. 3:16-CV-3027-M (BF), 2017 WL 4011266, at *1 (N.D. Tex. Sept. 11, 2017).  Courts generally afford plaintiffs one opportunity to amend, typically forgone only where amendment would be futile.  *Branham v. Bank of Am., N.A.*, No. 4:23-CV-00959-O-BP, 2024 WL 3277741, at *2 (N.D. Tex. May 30, 2024), *adopted*, 2024 WL 3278970 (N.D. Tex. July 2, 2024)).

Metropolis's brief in reply (Dkt. No. 26) does not argue that amendment of any of the issues they identify for dismissal would be futile; nor have they asked to dismiss the claims with prejudice as a result.  Accordingly, the undersigned concludes that Plaintiffs' request for leave to amend embedded in their response to the motion to dismiss (*see* Resp. at 24-25), should be granted.  *See Davis v. City of Dawson, Texas*, No. 3:19-CV-1751-L, 2020 WL 708026, at *1 (N.D. Tex. Feb. 11, 2020) (denying a motion to dismiss without prejudice and granting plaintiff leave to amend to cure deficiencies); *Parsons v. Deutsche Bank Nat'l Tr. Co. as Tr. For Holders of New Century Home Equity Loan Tr. Series 2005-A*, No. 3:18-CV-1287-L, 2019 WL

460145, at *1 (N.D. Tex. Feb. 6, 2019) (dismissing claims without prejudice and granting leave to amend).

## IV.  RECOMMENDATION

For the for foregoing reasons, the undersigned **RECOMMENDS** that Metropolis's motion to dismiss (Dkt. No. 11) be **GRANTED**; that Plaintiffs be given an opportunity to file an amended complaint within 21 days of the District Judge's acceptance of these findings, conclusions, and recommendation or another date established by the District Judge; and, if Plaintiffs fails to file an amended complaint within the time allowed, their claims be dismissed with prejudice for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In light of the foregoing, the undersigned further **RECOMMENDS** that Plaintiffs' motion for class certification (Dkt. No. 14) be **DENIED** as moot.

**SO RECOMMENDED** on August 29, 2025.


_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).